KATE WELLS, State Bar #107051
Attorney at Law
2600 Fresno Street
Santa Cruz, California 95062
Telephone: (831) 479-4475
Facsimile: (831) 479-4476
Email: lioness@got.net

Attorney for Plaintiff, CARL MATTHES



Filed
OCT 31 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Fee Paid

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

CARL MATTHES,

    Plaintiff,

vs.

COUNTY OF SANTA CRUZ;
SHERIFF STEVE ROBBINS;
LT. PAYNE; LT. WILSON
10 UNKNOWN CORRECTIONAL
OFFICERS AND OTHER
PERSONNEL AT THE SANTA
CRUZ COUNTY JAIL
EMPLOYED BY THE SANTA
CRUZ SHERIFF'S
DEPARTMENT,

    Defendants.

) C07 05559 RS
)
) **COMPLAINT FOR DAMAGES**
) **FOR VIOLATION OF CIVIL RIGHTS**
)
)
)
)
)
)
)
)
)
)
)
)
) **DEMAND FOR JURY TRIAL**

## GENERAL ALLEGATIONS

1. This action arises under the Civil Rights Act of 1871 (42 U.S.C. Sections 1983, 1985(2) and 1988) and the Fifth Amendment to the Constitution of the United States as applied to the states under the Fourteenth Amendment. This Court has jurisdiction of the claim herein under 28 U.S.C. Section 1331, 1332, 1343(3) 1343(4), 2201, and 2202.

2.    Plaintiff CARL MATTHES (hereinafter "Plaintiff") is, and was at all times

COMPLAINT FOR DAMAGES

1  herein, mentioned a citizen of the United States; and is, and was at all relevant times, a resident
2  of the County of Santa Cruz.
3      3. Defendant COUNTY OF SANTA CRUZ (hereinafter "COUNTY") is a political
4  subdivision of the State of California.
5      4.   Defendant SHERIFF STEVE ROBBINS (hereinafter "ROBBINS") is and was at
6  all relevant times the Sheriff of the COUNTY and responsible for the hiring, training and
7  discipline of Deputy Sheriffs and Correctional Officers in the COUNTY as well the
8  establishment of policies and procedures to be followed by the Deputy Sheriffs and Correctional
9  Officers in the COUNTY jail. LT. PAYNE and LT. WILSON were at all relevant times the
10 officers in charge of the SANTA CRUZ COUNTY JAIL. The 10 UNKNOWN
11 CORRECTIONAL OFFICERS AND OTHER PERSONNEL AT THE SANTA CRUZ
12 COUNTY JAIL EMPLOYED BY THE SANTA CRUZ SHERIFF'S DEPARTMENT
13 (hereinafter "UNKNOWN OFFICERS"), were, in performing the acts alleged herein, acting
14 either as agents of the COUNTY employed by the COUNTY Sheriff's Department or were
15 acting individually, outside the course and scope of their employment; and, in performing all of
16 the acts alleged herein, all defendants acted under color of the statutes, ordinances, regulations,
17 customs and usages of the COUNTY, and the COUNTY Sheriff's Department, and pursuant to
18 the official policy, custom and practice of COUNTY.
19     5.   The true names and capacities of the UNKNOWN OFFICERS are unknown to
20 the Plaintiff. Each of these parties acted as agent of or in concert with the named defendants in
21 the matters referred to herein and is responsible in some manner for the damages suffered by
22 Plaintiff. Plaintiff will amend this complaint to add the names and capacities of such defendants
23 when ascertained.               **STATEMENT OF FACTS**
24     6.   On or about November 8, 2005, Plaintiff was arrested and transported to
25 COUNTY jail. During the health screening interview, plaintiff informed the interviewer, who is
26 an UNKNOWN OFFICER, of all of the serious medical conditions from which he suffered, each
27 of which he was required to take medications as prescribed by his doctors. Additionally,
28 plaintiff informed the interviewer of the symptoms of possible problems he would suffer if

COMPLAINT FOR DAMAGES

1  deprived of his medications. Finally, plaintiff informed the interviewer that it was absolutely
2  crucial he receive a salt free diet as prescribed by his physicians.

3        7.    On November 11, 2005, plaintiff, who had still not received any of his necessary
4  and required medications despite repeated requests and pleas to UNKNOWN OFFICERS from
5  plaintiff and his wife, was checked by an intern from San Jose at the infirmary at the COUNTY
6  jail. Plaintiff heard the intern inform the UNKNOWN OFFICERS at the nurse's desk that
7  plaintiff had extremely serious medical problems, and that it was imperative that plaintiff
8  receive his medications immediately. The intern inquired of plaintiff as to the identity of his
9  doctors and plaintiff gave him the names of his doctors at the Veteran's Administration ("VA")
10 in Palo Alto and San Jose. Plaintiff heard the intern inform the jail staff, who are UNKNOWN
11 OFFICERS, to contact the VA immediately to obtain plaintiff's prescription medicine. The
12 intern inquired of the UNKNOWN OFFICERS how long it would take to get the prescriptions
13 and they flippantly responded "3 - 6 months". The intern informed the UNKNOWN OFFICERS
14 that plaintiff would likely suffer severe injury if he did not receive his medication immediately.

15       8.    On November 13, 2005, having still not received any of his prescription
16 medications despite his and his wife's repeated pleas to UNKNOWN OFFICERS, and having
17 received nothing but salt ridden food, plaintiff suffered an esophageal attack causing him severe
18 pain. In such an attack, phlegm coats plaintiff's throat and accumulates thereby blocking his air
19 passage making breathing extremely labored and preventing him from talking. Plaintiff was
20 coughing up blood and was in a state of delirium. In the initial medical interview, plaintiff had
21 informed the interviewer (UNKNOWN OFFICER) that this sort of an attack was a likely
22 consequence if he failed to get his medications for his esophageal condition which he is required
23 to take twice a day and if he was deprived of a salt free diet; moreover, plaintiff described in
24 detail the very symptoms he was suffering on November 13.

25       9.    Plaintiff's fellow inmates, alarmed by the attack, hit the emergency button to
26 summon the guards (UNKNOWN OFFICERS). Failing to consult his medical intake records,
27 the UNKNOWN OFFICERS assumed plaintiff was having a heart attack and placed a pill under
28 his tongue. According to the account of plaintiff's fellow inmates, the UNKNOWN OFFICERS

COMPLAINT FOR DAMAGES

1  delayed transporting plaintiff to the hospital for 10 to 15 minutes while they debated what type
2  of shackles they should place on plaintiff. At the hospital, plaintiff was treated as if his problem
3  was a heart condition because that is the only information given to the doctors by the
4  UNKNOWN OFFICERS despite the extensive information to the contrary contained in
5  plaintiff's medical intake files; plaintiff was then released to return to the COUNTY jail.

6       10.    On November 13, 14, and 15, 2005, UNKNOWN OFFICERS placed plaintiff in
7  an isolation cell with no medication and no outside contact. Three times a day, a tray of
8  inedible salt-laden food was shoved through a hole in his cell - he was not able to see or hear and
9  speak to anyone. Plaintiff's wife frantically and repeatedly called the COUNTY jail and spoke
10  to UNKNOWN OFFICERS explaining to them that the plaintiff would suffer severe
11  consequences if he did not receive his medication immediately. UNKNOWN OFFICERS did
12  nothing

13       11.    On or about November 14, 2005, plaintiff's wife, frustrated that she was unable to
14  speak to plaintiff and unable to get any assistance from UNKNOWN OFFICERS at the
15  COUNTY jail, finally attempted to contact the Chaplain at the COUNTY jail to see if he could
16  help plaintiff to receive the medication he so drastically needed - she left several detailed
17  messages for the Chaplain and never received any response from him or her. Throughout this
18  entire time, Plaintiff's wife called the jail repeatedly to inform UNKNOWN OFFICERS that
19  plaintiff would suffer severe consequences if he did not receive his prescribed medications. The
20  UNKNOWN OFFICERS failed to respond and never did respond to her repeated pleas for help
21  for the plaintiff.

22       12.    On November 16, plaintiff's wife contacted Dr. Riley, who is one of plaintiff's
23  physicians, to request that he do what he could to get the necessary medications to the plaintiff.
24  On that day, plaintiff received one pill whereas the prescribed dosage of that particular
25  medication was 7 pills per day. Every morning and evening when medications were being
26  handed out, plaintiff would wait in line only to be told by UNKNOWN OFFICERS that they did
27  not have any medication for him. Each time Plaintiff informed them that he desperately needed
28  his medication. Plaintiff is informed and believes and alleges thereon that the medication so

COMPLAINT FOR DAMAGES

desperately needed by plaintiff was on hand in the COUNTY jail infirmary.

13. Plaintiff informed UNKNOWN OFFICERS that he had a very important appointment at the VA Palo Alto hospital for an endoscopy procedure as a follow up to endoscopy surgery he had undergone on October 6, 2005, and for which he had been hospitalized for 3 days. He was also scheduled for an important series of vaccinations for his hepatitis. Despite their knowledge, UNKNOWN OFFICERS refused to transport plaintiff to the Palo Alto VA for these important medical procedures.

14. On November 18, 2005, after payment of bail, plaintiff was released at 5:00 p.m. Plaintiff's wife took him home where he finally got his medication and then slept for three days over the weekend. On Monday, November 21, plaintiff's wife got him out of bed and transported plaintiff to the emergency room at the VA hospital in Palo Alto due to plaintiff's severe ongoing suffering. The doctors at the VA were extremely concerned over plaintiff's condition including but not limited to fever, chills and severe fluid retention. The doctors performed an ambiosyntheisis procedure during which they removed more than a gallon of fluid from plaintiff's abdomen. Thereafter, the plaintiff was bed ridden for six months due to the infections and other conditions caused by the failure of UNKNOWN OFFICERS to treat plaintiff's medical conditions of which they were aware.

## CLAIM FOR DAMAGES
## VIOLATION OF CONSTITUTIONAL RIGHTS
### (Fifth and Fourteenth Amendments)

15. Plaintiff refers to and incorporates herein the allegations in Paragraphs 1 through 14 above.

16. As a direct and proximate result of defendants' actions (as described in detail under factual allegations), the plaintiff was deprived of is Fifth and Fourteenth Amendment Right to due process in that defendants were knowingly and deliberately indifferent to the objectively serious and known medical needs of the plaintiff while he was a pretrial detainee at the COUNTY jail. UNKNOWN OFFICERS denied, delayed and intentionally interfered with plaintiff's medical treatment and such denial constituted unnecessary and wanton infliction of

COMPLAINT FOR DAMAGES

pain and suffering on the plaintiff. Defendants' deliberate indifference caused plaintiff the substantial risk of serious damage to his future health and did cause the plaintiff serious damage to his health.

17. As a direct result of defendants' unlawful actions, plaintiff suffered severe physical and emotional injuries entitling plaintiff to monetary damages and compensation according to proof as well as reasonable attorney's fees incurred in pursuing this claim. Plaintiff is informed and believes and alleges thereon that defendants' actions have caused plaintiff some amount of permanent disability. Plaintiff, as a further proximate result of defendants' unlawful actions, was unable to pursue his usual occupation and thereby suffered further economic damages. Plaintiff is informed and believes and alleges thereon that his future earning capacity has been damaged as a result of defendants' unlawful action.

18. Plaintiff is informed and believes and alleges thereon that the unlawful practices and procedures described herein was, at all relevant times herein, persistent and widespread such that the practice amounted to a custom or usage with the force of law. Policy makers for the COUNTY including ROBBINS who is in charge of operations at the COUNTY jail, were aware of the unlawful practice or the unlawful practice was so widespread and well-settled that COUNTY policymakers had constructive knowledge of the practice of deliberate indifference to the serious medical and dietary needs of pretrial detainees at COUNTY jail and have done nothing to correct the policy or to end the unlawful practice and are therefore liable in damages for the injuries to plaintiff as described herein.

19. The COUNTY is additionally liable to plaintiff for his damages due to the failure of ROBBINS to adequately train jail personnel as to how to handle pretrial detainees with serious medical and dietary needs and how to handle medical emergencies as happened to plaintiff herein. Such failure to train amounts to a deliberate indifference to the constitutional rights of pretrial detainees at the COUNTY jail. Such failure to train resulted in the injuries to plaintiff as described herein and plaintiff's injuries could have been avoided altogether had the jail personnel been appropriately trained. It is the defendants' constitutional duty to provide medical care to pretrial detainees in their custody who have no other access to such medical care

COMPLAINT FOR DAMAGES

while in their custody.

20. Defendants' actions were malicious, extreme and outrageous causing plaintiff severe physical, financial and emotional distress thereby entitling plaintiff to punitive damages according to proof against the individual defendants.

## DEMAND FOR JURY TRIAL

21. Plaintiff hereby demands a trial by jury on his claim for relief and damages.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff prays for the following relief as to his claim for relief and damages:

A. A judgment awarding plaintiff general, special damages in amounts according to proof and a judgment of punitive damages against the individual defendants;

B. A judgment awarding plaintiff reasonable attorney's fees;

C. A judgment awarding plaintiff her costs of suit; and

D. Such other and further relief as the Court deems proper.

Dated: 10/18/07

KATE WELLS
Attorney for Plaintiff, CARL MATTHES